McLAUGHLIN & STERN, LLP
Attorneys for G.A.P. Adventures, Inc.
260 Madison Avenue
New York, New York 10016
(212) 448-1100

Paul H. Silverman, Esq.
Paul H. Levinson, Esq.
Jacqueline C. Gerrald, Esq.

HEARING DATE:
March 31, 2010

HEARING TIME:
10:00 A.M.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re

MORGAN & FINNEGAN L.L.P.,

        Debtor

Chapter 7
Case No.: 09-11203-RDD

-------------------------------------------------------------x

ROY BABITT AS CHAPTER 7 TRUSTEE OF
MORGAN & FINNEGAN L.L.P.,

        Plaintiff,

   v.

G.A.P. Adventures, Inc.

        Defendant.

Adv. Proc. No. 10-02789-RDD

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION TO DISMISS OR STAY THE ADVERSARY PROCEEDING
## AND FOR OTHER RELIEF

McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
(212) 448-1100
*Attorneys for G.A.P. Adventures, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................i

PRELIMINARY STATEMENT..................................................................

STATEMENT OF FACTS...........................................................................

LEGAL ARGUMENT...................................................................................

    I.     THE ADVERSARY PROCEEDING MUST BE ARBITRATED

         A. The Dispute Falls Squarely Within The Scope Of The Mandatory
            Arbitration Provision............................................................

         B. There Is A Strong National Policy Favoring Arbitration and
            Agreements To Arbitrate Must Be Rigorously Enforced.................

         C. Neither The Bankruptcy Code or The Chapter 7 Proceeding Precludes
            Arbitration Of The Trustee's Claims......................................

         D. There Has Been No Substantive Action Taken In The Adversary
            Proceeding (And Accordingly, No Waiver)..............................

         E. Even Absent An Arbitration Agreement, Arbitration Is Advantageous
            In The Adversary Proceeding...............................................

    II.    THE ADVERSARY PROCEEDING SHOULD BE DISMISSED AND
        ARBITRATION COMPELLED, OR, IN THE ALTERNATIVE,
        STAYED PENDING ARBITRATION......................................

CONCLUSION.....................................................................................

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allegiance Telecom, Inc.*, 356 B.R. 93 (S.D.N.Y. 2006) ........................................8

*Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160 (2d Cir. 2000) ..............5, 7, 11, 13

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238,
84 L.Ed.2d 158 (1985) ......................................................................5, 7, 12

*Gertz v. Echo Rock Ventures LLC, (In re Arter & Hadden LLP)*, 339 B.R. 445
(Bank. N.D. Ohio 1/31/06) ......................................................................11

*Kittay v. Landegger, et. al.*, 227 B.R. 181 (Bankr. S.D.N.Y. 2002) ......................10

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 88 F.Supp.2d 168
(S.D.N.Y. 2000), aff'd, 252 F.3d 218 (2d Cir. 2001) .......................................3

*MBNA Am. Bank v. Hill*, 436 F. 3d 104 (2d Cir. 2006) ................................5, 9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927
74 L.Ed.2d 765 (1983) ...................................................................5, 6, 7, 11

*Ofelia Rodriguez De Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ...........7

*Preston v. Ferrer*, 252 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) ....................5

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332
96 L.Ed.2d 185 (1987) ............................................................................5

*U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.*, 197 F.3d
631 (2d Cir. 1999) .........................................................................5, 10, 13

*Vimar Seguros y Reaseguros, S.A. v. M.V. Sky Reefer*, 513 U.S. 1013, 115 S.Ct. 571
132 L.Ed.2d 461 (1994) ............................................................................7

## STATUTES

9 U.S.C. § 1 ...............................................................................................1

9 U.S.C. § 2 ...............................................................................................5

9 U.S.C. § 3 ...............................................................................................6

9 U.S.C. § 4 ...............................................................................................6

Fed. R. Civ. P. 12(b)(1) ...............................................................................1

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of the motion of G.A.P. Adventures, Inc. ("G.A.P." or "Defendant") for an Order (a) dismissing the adversary proceeding and compelling arbitration of the claims asserted therein pursuant to Fed. R. Civ. P. 12(b)(1) as incorporated by Fed. R. Bankr. P. 7012, and 9 U.S.C. § 1 et. seq., or, (b) in the alternative, staying the adversary proceeding in favor of arbitration pursuant to 9 U.S.C. § 1 et. seq.; and, (c) granting such other and further relief as this Court may deem just and proper.

Roy Babitt, as Chapter 7 Trustee ("Trustee") of Morgan & Finnegan L.L.P. ("Morgan & Finnegan") commenced the instant adversary proceeding, on behalf of Morgan & Finnegan, for all billed hourly time claimed for legal fees and expenses alleged are due and owing by G.A.P., a former client of the law firm of Morgan & Finnegan.  G.A.P. denies that all such billed hourly fees and/or expenses are due and owing, and upon the inception of this proceeding moves to have another forum, not this Court, hear and determine this garden variety collection dispute based on the express provision of an enforceable arbitration agreement between the parties which mandated that such disputes or claims be heard before an arbitrator

The alternative is to deny efficacy to federal arbitration law as well as to burden this already overtaxed court with collection disputes of unliquidated accounts receivables, and which are not core proceeding issues and do not effect the outcome of this Chapter 7 liquidation case by any stretch of the imagination.

## STATEMENT OF FACTS

According the allegations in the complaint and the retainer agreement (Engagement Letter) attached thereto and made part thereof, on or about June 16, 2008, G.A.P. and Morgan & Finnegan, entered into an attorney-client relationship whereby Morgan & Finnegan was to provide legal representation of G.A.P. in two actions involving an alleged trademark infringement; one action was pending in the U.S. District Court for the Southern District of New York and the second was in the U.S. Patent and Trademark Office Before the Trademark Trial and Appeals Board  See Exhibit A of the supporting declaration for this motion.

The Engagement Letter contains a separate section entitled, "Arbitration of Disputes" and specifically provided as follows:

> Morgan & Finnegan does not expect there to be any disputes with G.A.P. Adventures, Inc. in connection with our respective obligations. However, *if there are any claims or disputes arising out of this agreement or Morgan & Finnegan's representation of G.A.P. Adventures, Inc.'s interests, it is expressly agreed that those claims or disputes will be resolved <u>exclusively</u> by submission to binding arbitration in New York City under the commercial rules then existing of the American Arbitration Association with a single arbitrator who shall be a trademark attorney with at least ten years of trademark litigation experience* and who shall also be a member of the bar of New York, New Jersey or Connecticut. *This arbitration provision shall apply to, but is not limited to, any claim or dispute relating to unpaid fees and expenses*, any act or omission, malpractice, negligence, breach of fiduciary duty, breach of standard of care, *breach of contact or any claim for damages*. Judgment on the arbitration award may be entered in any court having jurisdiction. There may be advantages and disadvantages to arbitration. Accordingly, G.A.P. Adventures, Inc. should carefully consider whether arbitration is acceptable, and should consult with independent counsel if G.A.P. Adventures, Inc. believes it is appropriate to do so.

See Exhibit A, ¶ 9, at pp. 5-6 (emphasis supplied).

The claims in the Complaint are nothing more than a breach of contract, the Engagement Letter, for failing to pay all disputed hourly billed legal fees and expenses. The Dispute is exactly the claim or dispute which Morgan & Finnegan and G.A.P. clearly, unequivocally and

"expressly agreed" in the Engagement Letter "[would] be resolved exclusively by submission to binding arbitration in New York City under the commercial rules then existing of the American Arbitration Association." See Exhibit A, ¶ 9, at p. 5. Thus, the basis of the claims asserted in the Complaint is the Engagement Letter. Interestingly, the 15-page pleading is conspicuously bereft of any reference to the *mandatory* arbitration provision which was specifically delineated in the Engagement Letter.

For the reasons discussed in detail below, the instant adversary proceeding should be dismissed and arbitration compelled, or in the alternative, the instant adversary proceeding stayed pending arbitration.

3

## LEGAL ARGUMENT

## POINT I

## THE ADVERSARY PROCEEDING MUST BE ARBITRATED

### A. The Dispute falls squarely within the scope of the mandatory arbitration provision.

The Second Circuit employs a three-part test to determine whether a dispute falls within the scope of an arbitration agreement's clause: "First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. (citations omitted). Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. (citations omitted). Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. (citations omitted). Where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.' (citations omitted)." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 88 F.Supp.2d 168 (S.D.N.Y. 2000), aff'd, 252 F.3d 218 (2d Cir. 2001). The Dispute falls squarely within the scope of the mandatory arbitration provision of the Engagement Letter.

Here, there is a broad provision which provides for the arbitration of *"any* claims or disputes arising out of this agreement or Morgan & Finnegan's representation of G.A.P. Adventures, Inc.'s interests." See Exhibit A (emphasis added). The arbitration provision further provides a narrowly tailored clause which specifically provides that "*This arbitration provision shall apply to, but is not limited to, any claim or dispute relating to unpaid fees and expenses,*

4

any act or omission, malpractice, negligence, breach of fiduciary duty, breach of standard of

care, ***breach of contact or any claim for damages***." See Exhibit A (emphasis added). The

claims sought in this adversary proceeding are not collateral but arise ***directly*** under the express

provisions of the agreement which provides for the mandatory arbitration of the Dispute.

Moreover, the use of the term "exclusively" compels the parties to arbitrate. Specifically,

the Engagement Letter states as follows:

> ...it is expressly agreed that those claims or disputes ***will be
> resolved exclusively by submission to binding arbitration in New
> York City*** under the commercial rules then existing of the
> American Arbitration Association with a single arbitrator who
> shall be a trademark attorney with at least ten years of trademark
> litigation experience and who shall also be a member of the bar of
> New York, New Jersey or Connecticut.

See Exhibit A (emphasis added). The arbitration provision is a separate section of a seven (7)

page law firm retainer agreement. There are no options in terms of jurisdiction delineated in the

Engagement Letter and certainly no provision carved out for any state or federal court to hear the

Dispute. Instead, the retainer agreement mandated that "those claims or disputes ***will be resolved***

***exclusively by submission to binding arbitration in New York City*** under the commercial rules

then existing of the American Arbitration Association.*" and as to the arbitrator he/she* "***shall be***

***a trademark attorney*** with at least ***ten years of trademark litigation experience*** and who shall

also be a ***member of the bar of New York, New Jersey or Connecticut.***" See Exhibit A.

Thus, there is and can be no dispute that the parties clearly, unequivocally and expressly

agreed that arbitration was to be the ***exclusive*** remedy available in the event of a dispute and

even agreed upon the *qualifications* of the arbitrator who would be able to adjudicate such

disputes. To have the matter heard by any other forum would be in contravention of the parties'

binding agreement and federal law regarding favoring arbitration when agreed by the parties.

The Trustee stands in the shoes of Morgan & Finnegan and cannot lightly seek rights enforcement under the Engagement Letter and at the same time elect to not meet its obligation to arbitrate agreed to in the same Engagement Letter.

## B. There Is A Strong National Policy Favoring Arbitration and Agreements to Arbitrate Must be Rigorously Enforced

The Federal Arbitration Act establishes a "federal policy favoring arbitration," and *requires* the Courts to "rigorously enforce agreements to arbitrate." Preston v. Ferrer, 252 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008); Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), citing, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) and Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); see also, MBNA Am. Bank v. Hill, 436 F. 3d 104 (2d Cir. 2006); Crysen/Montenay Energy Co. v. Shell Oil Co., 226 F.3d 160 (2d Cir. 2000); (and, U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc., 197 F.3d 631 (2d Cir. 1999) (emphasis supplied).

Specifically, the Federal Arbitration Act (the "Act") provides as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract.

See 9 U.S.C. § 2 (emphasis supplied).

6

The Act provides two avenues to enforce an arbitration agreement, either by means of an

affirmative order to engage in arbitration or a stay of litigation in any case raising a dispute

which should be referred to arbitration.  Moses H. Cone Mem'l Hosp., supra, 460 U.S. at 22, 103

S.Ct. at 940.

Pursuant to section 3 of the Act,

> ***If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which
> such suit is pending***, upon being satisfied that the issue involved in
> such suit or proceeding is referable to arbitration under such an
> agreement, ***<u>shall</u> on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance
> with the terms of the agreement***, providing the applicant for the
> stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis supplied).

Additionally, section 4 of the Act provides that,

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may
> petition any United States district court which, save for such
> agreement, would have jurisdiction under title 28, in a civil action
> or in admiralty of the subject matter of a suit arising out of the
> controversy between the parties, for an order directing that such
> arbitration proceed in the manner provided for in such
> agreement…. The court shall hear the parties, and ***upon being
> satisfied that the making of the agreement for arbitration or the
> failure to comply therewith is not in issue, the court <u>shall</u> make
> an order directing the parties to proceed to arbitration in
> accordance with the terms of the agreement***.

9 U.S.C. § 4 (emphasis supplied).

"By its terms, the Act leaves no room for the exercise of discretion by a district court, but

instead ***mandates*** (emphasis supplied) that district courts *shall* (emphasis in text) direct the

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

Dean Witter, 470 U.S. at 218, 105 S.Ct. at 1241, citing, 9 U.S.C. §§ 3, 4; see also,

7

Crysen/Montenay Energy Co. v. Shell Oil Co., 226 F.3d 160 (2d Cir. 2000).  Absent a ground for

revocation, agreements to arbitrate *must* be enforced by the Courts.  Dean Witter, supra at 218,

105 S.Ct. at 1241.

      "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding

the presence of other persons who are parties to the underlying dispute but not to the arbitration

agreement."  Moses H. Cone Mem'l Hosp., 460 U.S. at 20, 103 S.Ct. at 939.  Thus, even if the

result would be the possibly inefficient maintenance of separate proceedings in different forums,

that is, one in arbitration, and the other in bankruptcy court, the court is required to compel

arbitration where an arbitration agreement has been signed.  See id; see also, Dean Witter, supra,

at 213, 105 S.Ct. at 1238-9 ("By compelling arbitration of state-law claims, a district court

successfully protects the parties' contractual rights and their rights under the Arbitration Act.");

Ofelia Rodriguez De Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989); and,

Vimar Seguros y Reaseguros, S.A. v. M.V. Sky Reefer, 513 U.S. 1013, 115 S.Ct. 571, 132

L.Ed.2d 461 (1994).

      Based upon the foregoing, the parties' agreement to arbitrate the Dispute in the instant

adversary proceeding must be enforced.

### C. Neither the Bankruptcy Code or the Chapter 7 Case Precludes Arbitration of The Trustee's Claims

      The Complaint does not allege that the Morgan & Finnegan filing of a petition for relief

under Chapter 7 of the U.S. Bankruptcy Code vitiates the mandatory arbitration provisions of its

Engagement Letter with G.A.P.  The Complaint alleges only arising as an attempt to adjudicate

and only then to recover a disputed accounts receivable. This garden variety collection action

could very well be maintained independent of any bankruptcy case filed by Morgan & Finnegan

before this Court.

Even when a party to an arbitration agreement raises a claim which is founded upon statutory rights, this does not diminish the duty to arbitrate. Shearson/Am. Express, Inc. supra. As the Supreme Court explained in the case Shearson/Am. Express, " 'we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals' should inhibit enforcement of the Act 'in controversies based on statutes.' " (citations omitted). "The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Shearson, supra, 482 U.S. at 226-7, 107 S.Ct. at 2337.

Where there is a dispute which involves both the Bankruptcy Code and the Arbitration Act, the Court will resolve such conflicts by distinguishing "between claims over which the bankruptcy judges have discretion to refuse arbitration and those that they must send directly to arbitration." MBNA Am. Bank, N.A., supra, at 108.

In In re Allegiance Telecom, Inc., 356 B.R. 93 (S.D.N.Y. 2006)(J.Drain), this Court similarly stayed certain disputes which were subject to mandatory alternative dispute resolution. Allegiance Telecom, Inc. ("Allegiance") and its subsidiaries had commenced a Chapter 11 case; and thereafter, Allegiance and an affiliate, Allegiance Telecom Company Worldwide ("ATCW") sold substantially all of their assets and stock of the reorganized direct and direct subsidiaries of ATCW to XO Communications ("XO"). Id. at 96-97. Allegiance's confirmed Plan of Reorganization provided for the creation of the Allegiance Telecom Liquidating Trust (the "ATLT") and the transfer to the ATLT of various remaining assets of the Allegiance debtors, including certain excluded assets. Id. at 97 A dispute arose as to whether XO was entitled to keep

9

the proceeds of the Sellers' certain pre-closing accounts Id. This Court heard and decided on the

issue of whether certain issues had to decided by the binding ADR procedures contained in the

asset purchase agreement between the parties. Id. at 98. In this regard, the Court declined

jurisdiction and stayed the proceding based on the alternative dispute resolution provision in the

agreement between the parties.Id. at 109-112.

The Court explained that pursuant to the asset purchase agreement, if a dispute arose as to

the amounts of the net working capital as of the early funding date as calculated by XO, then the

parties were required to cause a neutral nationally recognized accounting firm, defined as an

accounting referee, to calculate the Early Funding Date Working Capital, which was to be final

and binding upon XO and the sellers.  Id. at 110.  Accordingly, the Court held that, "the

calculation of the Working Capital Adjustment clearly is the subject of mandatory alternative

dispute resolution under the Federal Arbitration Act over which *the Court may not exercise

jurisdiction*." Id. at 111 (emphasis supplied), citing, MBNA Am. Bank N.A. v. Hill, 436 F.3d

104, 108, 111 (2d Cir. 2006).  The Court likewise held with respect to the second dispute, that,

"as with the Working Capital Adjustment, the parties agreed in the XO Settlement upon a

definitive alterative dispute resolution process for calculating the True-up… *accordingly, this

aspect of the adversary proceeding is stayed* until the Accounting Referee delivers its report

calculating the applicable percentage for the True-up, or the dispute is consensually resolved."

Id. at 112 (emphasis added).

For the same reasons, the instant adversary proceeding should be stayed.  As in

Allegiance, the parties agreed upon a definitive process for arbitration of the Dispute and went a

step further-they set forth the specific qualifications of the arbitrator who would resolve the

Dispute.  Namely, the arbitrator had to be "*a trademark attorney* with at least *ten years of*

10

*trademark litigation experience*" and also "a *member of the bar of New York, New Jersey or Connecticut.*" See Exhibit A. Therefore, it is respectfully submitted that as in Allegiance, this Court may not exercise jurisdiction and the instant adversary proceeding must be stayed (if not dismissed) and arbitration compelled.

Bankruptcy courts do *not* have discretion to refuse to compel arbitration where, as in the instant proceeding, there are "non-core" bankruptcy issues, or matters that are "simply 'related to'" the bankruptcy proceeding. See id.; see also, Crysen/Montenay Energy Co. supra, 226 F.3d at 162. Under such circumstances, "the presumption in favor of arbitration usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings." See MBNA Am. Bank, N.A., supra, at 108; see also, U.S. Lines, Inc., supra, at 640.

However, even if there is a core proceeding involved, such claims are subject to mandatory arbitration. See MBNA Am. Bank, N.A., supra; see also, Kittay v. Landegger, et. al., 227 B.R. 181 (Bankr. S.D.N.Y. 2002); and, In re Quigley Co., Inc., 361 B.R. 723 (Bankr. S.D.N.Y. 2007). The bankruptcy court does *not* even have discretion to override an arbitration agreement *unless* such proceeding is based upon provisions of the Bankruptcy Code which "'inherently conflict[s]' with the Arbitration Act" or *unless* arbitration would " 'necessarily jeopardize' the objectives of the Bankruptcy Code." MBNA Am. Bank, N.A., supra, at 108. (emphasis supplied); see also, U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc., 197 F.3d 631. In MBNA, while the Court concluded that the claim was a "core proceeding," it nevertheless referred the matter to arbitration, explaining as follows:

> First, and most importantly, arbitration of Hill's § 362(h) claim would not jeopardize the important purposes that the automatic stay serves: providing debtors with a fresh start, protecting the assets of the estate, and allowing the bankruptcy court to centralize disputes concerning the estate. (citations). District courts have often reversed bankruptcy decisions refusing to compel arbitration

11

> of core bankruptcy matters and granted motions to arbitrate core
> claims on the grounds that arbitration would not interfere with or
> affect the distribution of the estate.(citations omitted).

Id., at 109.

The instant adversary proceeding involves no core bankruptcy issue and does not arise

only in the context of a bankruptcy case.  The Dispute concerns a claim filed by the Trustee, on

behalf of the debtor, Morgan & Finnegan, against a non-creditor of the estate, G.A.P., and if

arbitrated, its resolution would not adversely affect the underlying purposes and objectives of the

Bankruptcy Code.  This adversary proceeding is a mere collection action and therefore is subject

to the Act, which mandates arbitration of the Dispute.  See Gertz v. Echo Rock Ventures LLC,

(In re Arter & Hadden LLP), 339 B.R. 445 (Bank. N.D. Ohio 1/31/06).  While G.A.P. maintains

that there is no ambiguity in the explicit provisions of the mandatory arbitration provision of the

Engagement Letter which requires arbitration of the Dispute, the Supreme Court has ruled that

any doubts as to the scope of arbitrable issues should be resolved in *favor* of arbitration.  See

Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25, 103 S.Ct. at 941.

Accordingly, the Dispute must be arbitrated.

### D.  There Has Been No Substantive Action Taken In The Adversary Proceeding (And Accordingly, No Waiver)

Since there is a federal policy which strongly favors arbitration, any doubts concerning a

waiver of arbitration are resolved in favour of arbitration.  See, Crysen/Montenay Energy Co. v.

Shell Oil Co., 226 F.3d at 162, (citations omitted).  While there is no bright-line rule, the factors

which the Court considers in determining whether a party has waived its right to arbitration are-

"(1) the time elapsed from commencement of litigation to the request for arbitration, (2) the

amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." Id. at 163.

Here, the arbitration issue was raised as soon as counsel was engaged, at the inception of the case, prior to filing a responsive pleading or otherwise moving in response to the complaint. There has been no litigation in this proceeding whatsoever. Even the filing of the bankruptcy action is not waiver. Given that the action was an attempt to meet for settlement purposes and to request plaintiff meet its obligation to arbitrate set forth in the agreement which is the basis of his collection proceeding, there can be no prejudice if Dispute is arbitrated pursuant to the mandatory arbitration provision.

Accordingly, the Dispute must be arbitrated.

### E.  Even Absent An Arbitration Agreement, Arbitration Is Advantageous In The Adversary Proceeding

Arbitration offers certain advantages in the instant adversary proceeding which would not otherwise be available in this U.S. Bankruptcy Court.  First, the cost of arbitration would not unduly burden the estate and, in fact, would be less expensive than litigating the issues in an adversary proceeding before this U.S. Bankruptcy Court because any findings and recommendations of the U.S. Bankruptcy Judge would be subject to a *de novo* review in the U.S. District Court.  Second, arbitration would not delay the administration of the bankruptcy estate but, in fact, would be a speedier process because the Dispute can be resolved more quickly by an arbitrator and without unreasonable delay.  Accordingly, arbitration would not deplete estate assets due to the passage of time.

In the case <u>Dean Witter</u>, the Supreme Court examined the legislative history of the Act and noted the House Report's observation that, "it is appropriate that the action should be taken

13

at this time when there is so much agitation against the costliness and delays of litigation. These matters can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable." Dean Witter, supra, 410 U.S. at 220, 105 S.Ct. at 1242.

Accordingly, arbitration will be advantageous to the parties in the instant adversary proceeding.

## II.   THE ADVERSARY PROCEEDING SHOULD BE DISMISSED AND ARBITRATION COMPELLED, OR, IN THE ALTERNATIVE, STAYED PENDING ARBITRATION

The Dispute is governed by the enforceable arbitration clause in the Engagement Letter which both Morgan & Finnegan & G.A.P. voluntarily entered into. Morgan & Finnegan not only made a free choice to enter into the agreement to arbitrate the Dispute, it drafted, prepared and signed the Engagement Letter which contained a mandatory arbitration clause under the specific provision entitled "Arbitration of Disputes." It does not appear that the court has discretion to deny enforcement of the parties' agreement.

Where there is a non-core proceeding, bankruptcy courts have the power to stay or dismiss such proceeding in favor of arbitration. See, Crysen/Montenay Energy Co. v. Shell Oil Co., 226 F.3d 160; U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc., 197 F.3d 631. Moreover, as discussed above, bankruptcy courts lack the discretion to refuse to stay or dismiss adversary proceedings unless such proceeding is based upon provisions of the Bankruptcy Code which "'inherently conflict[s]' with the Arbitration Act" or unless arbitration would " 'necessarily jeopardize' the objectives of the Bankruptcy Code." MBNA Am. Bank, N.A., supra, at 108; see also, U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc., 197 F.3d 631. Thus, a stay or dismissal is warranted.

14

To reiterate, the instant adversary proceeding involves no core bankruptcy issue and does not arise only in the context of a bankruptcy case. The Dispute is a collection matter, and if arbitrated, its resolution would not adversely affect the underlying purposes and objectives of the Bankruptcy Code. Nor would a stay of the bankruptcy proceeding jeopardize the debtor's ability to formulate its plan or nor weaken its financial situation.

Based upon the foregoing, the instant adversary proceeding should be dismissed and arbitration compelled or, in the alternative, stayed pending arbitration.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that an order dismissing the Complaint and compelling arbitration is warranted, or in the alternative, an order staying the instant adversary proceeding pending arbitration.

Dated: New York, New York
       March 17, 2010

McLAUGHLIN & STERN, LLP

By: _____
Paul H. Silverman, Esq. (PS 0538)
Paul H. Levinson, Esq. (PL 5528)
Jacqueline C. Gerrald, Esq. (JG 2001)
260 Madison Avenue
New York, New York 10016
(212) 448-1100
*Attorneys for G.A.P. Adventures, Inc.*